UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

Porfirio Gallegos and
Maria Gallegos,

Case No.: 15-32239-RBR
Chapter 13

Debtors.
_______________________________________/

**U.S. BANK NATIONAL ASSOCIATION'S EX PARTE MOTION TO APPROVE LOAN MODIFICATION AGREEMENT**

*(Real Property Address: 16541 SW 62 Street, Southwest Ranches, FL 33331)*

U.S. Bank National Association, Not in Its Individual Capacity but Solely as Trustee for NRZ Pass-Through Trust VIII ("Secured Creditor"), by and through undersigned counsel, requests entry of an order approving the Loan Modification Agreement between Secured Creditor, Porfirio Gallegos and Maria Gallegos, and in support thereof states:

1. Debtors' Bankruptcy Case: This case was commenced by the filing of a voluntary Chapter 13 petition on December 30, 2015 (the "Petition Date") by Porfirio Gallegos and Maria Gallegos (the "Debtors").

2. Collateral: Secured Creditor holds a mortgage lien against the Debtors' real property located 16541 SW 62 Street, Southwest Ranches, FL 33331 (the "Property").

3. Modification: During the Mortgage Modification Mediation process, Secured Creditor and the Debtors successfully completed a loan modification and the parties entered into a Loan Modification Agreement (the "Modification Agreement"). On or around December 12, 2016 the Debtors accepted the offer by signing and returning the Modification Agreement to Secured Creditor. A copy of the signed Modification Agreement is attached hereto as **Exhibit A**.

4. Modification Terms: The new unpaid principal balance is $652,893.73. The new monthly mortgage payment will be $2,578.43 with a fixed interest rate of 3.625%. The escrow amount is subject to adjustment.

5. Application of Funds: Secured Creditor requests that the order clarifies that funds received prior to the modification are applied to the pre-modified mortgage and all funds received after the modification date are applied to the modified terms. Any additional adequate protection/trial payments received from the Chapter 13 Trustee after the modification date will be applied to the modified mortgage.

6. Court Approval: To date, the Debtors have not filed a motion seeking approval of the Modification Agreement. Accordingly, in order to avoid revoking the Modification Agreement, Secured Creditor now seeks a Court order approving the Modification Agreement.

7. Attorneys' Fees: Secured Creditor has incurred additional fees and costs by the filing of this motion. Secured Creditor requests that the attorneys' fees and costs are recoverable.

WHEREFORE, the Secured Creditor requests that the Court enter an order approving the Loan Modification Agreement between Secured Creditor, Secured Creditor, Porfirio Gallegos and Maria Gallegos, and for such other and further relief as the Court deems just and proper.

MCCALLA RAYMER LEIBERT PIERCE, LLC

By: /s/Kevin A. Comer

Kevin Comer
Florida Bar No. 55553
110 S.E. 6th Street, Suite 2400
Ft. Lauderdale, FL 33301
Phone: 954-332-9390
Fax: 954-332-9390
Email: kevin.comer@mccalla.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on February 22, 2017 to all parties on the list to receive e-mail notice/service for this case, via the Notice of Electronic Filing (which is incorporated herein by reference), and via U.S. Mail to Porfirio Gallegos, 16541 SW 62 ST, Fort Lauderdale, FL 33331 and Maria Gallegos, 16541 SW 62 ST, Fort Lauderdale, FL 33331.

By: *_/s/Kevin A. Comer_*
Kevin Comer

- Stacy Bressler sbressler@aol.com
- Angelo M Castaldi axm@trippscott.com, bankruptcy@trippscott.com;dst@trippscott.com
- Office of the US Trustee USTPRegion21.MM.ECF@usdoj.gov
- Ashley Prager Popowitz Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com
- Robert A Stiberman ras@stibermanlaw.com, stlawecf@gmail.com
- Robin R Weiner ecf@ch13weiner.com;ecf2@ch13weiner.com

**After Recording Return To:**
**CoreLogic SolEx**
**1637 NW 136th Avenue Suite G-100**
**Sunrise, FL 33323**

**This Document Prepared By:**
Jacob Hamilton
**NATIONSTAR MORTGAGE LLC**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**

**Parcel ID Number: 51-40-05-01-0176**

[Space Above This Line For Recording Data]

Original Recording Date: **December 19, 2005** Loan No: [redacted]**0702**
Original Loan Amount: **$512,800.00** Investor Loan No: [redacted]**3204**
New Money: **$269,226.86**

# LOAN MODIFICATION AGREEMENT

**(Providing For Fixed Interest Rate)**

This Loan Modification Agreement ("Agreement"), made this 17th day of November, 2016, between **PORFIRIO R. GALLEGOS and MARIA M. GALLEGOS** ("Borrower") and **Nationstar Mortgage LLC, whose address is 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated **December 14, 2005** and recorded in Book/Liber **OR 41120**, Page **273**, Instrument No: **105624607** and recorded on **December 19, 2005**, of the Official Records of **BROWARD County, FL** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**16541 SW 62 ST, SOUTHWEST RANCHES, FL 33331,**
(Property Address)

the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **November 1, 2016**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$652,893.73**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

[redacted]

Interest will be charged on the Unpaid Principal Balance at the yearly rate of **3.625%**, from **November 1, 2016**. Borrower promises to make monthly payments of principal and interest of U.S. $**2,578.43**, beginning on the **1st** day of **December, 2016**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **3.625%** will remain in effect until principal and interest are paid in full. If on **November 1, 2056** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security

Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging [ ].

(g) In the event of any action(s) arising out of or relating to this Agreement or in connection with any foreclosure action(s) dismissed as a result of entering into this Agreement, if permitted by applicable law, I will remain liable for and bear my own attorney fees and costs incurred in connection with any such action(s).

(h) Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which the borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

6. In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

7. Our records indicate that you are the Debtor in an active bankruptcy proceeding. Please be advised that Court and/or Bankruptcy Trustee approval of this loan modification agreement may be required depending upon jurisdictional requirements. If approval of the loan modification is required, Nationstar will not honor the loan modification agreement until evidence of the required approval is provided.

8. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

9. Pursuant to Section 199.145(4)(b), Florida Statutes, additional nonrecurring intangible tax is due. This Mortgage is given in connection with the refinancing of an obligation secured by an existing mortgage, recorded in Official Records Book OR 41120, Page 273, Instrument No: 105624607, Public Records of BROWARD County, Florida from the Mortgagor hereunder to the Mortgagee hereunder, or to the assignor of the Mortgagee hereunder. As of the date of refinancing, the unpaid principal balance of the original obligation, plus accrued by unpaid interest, secured by the existing mortgage is equal to $383,666.87. The principal balance of the new obligation secured by this Mortgage is $652,893.73, which amount represents, as of the refinancing, the excess of the unpaid principal balance of the original obligation, plus accrued by unpaid interest. Notwithstanding anything to the contrary contained in the foregoing, if the obligor under the new obligation is not liable to the obligee under the obligation secured by this Mortgage, then the additional nonrecurring intangible tax shall be computed on the entire principal balance of the new obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_______________________ Date: 12-12.16
**PORFIRIO R. GALLEGOS** -Borrower

_______________________ Date: 12-12-16
**MARIA M. GALLEGOS** -Borrower

_______ [Space Below This Line For Acknowledgments] _______

State of Florida

ss.

County of BROWARD

The foregoing instrument was acknowledged before me, Notary Public this 12 day of DECEMBER, 2016, by **PORFIRIO R. GALLEGOS and MARIA M. GALLEGOS** who is personally known to me or who has produced FL DL as identification.

EAN D. LAMBERT
NOTARY
My Comm. Expires
March 13, 2020
No. FF 970563
PUBLIC
STATE OF FLORIDA

_______________________
(Signature of person taking acknowledgment)

EAN D. LAMBERT
(Name typed printed or stamped)

NOTARY PUBLIC
(Title or Rank)

FF 970563
(Serial Number if any)

My Commission expires : 3/13/20

______________________ 12-13-16

STATE OF FLORIDA )
) SS:
COUNTY OF BROWARD )

**BEFORE ME,** the undersigned authority, personally appeared, Maria M Gallegos, who being duly sworn under oath, and who is personally known to me or produced Driver's License as identification.

**SWORN TO AND SUBSCRIBED** before me this 13th day of December 2016.

Sharla McPherson
Notary Public
State of Florida
My Commission Expires 2/16/2020
Commission No. FF 960928

______________________
**NOTARY PUBIC**
State of Florida

**Nationstar Mortgage LLC**

By: Jacob Hamilton (Seal) - Lender
Name: Jacob Hamilton
Title: **Assistant Secretary**

2-6-2017
Date of Lender's Signature

[Space Below This Line For Acknowledgments]

The State of TX
County of Dallas

Before me Jacob D. Valdez /Notary Public (name/title of officer) on this day
(Please Print Name)
personally appeared Jacob Hamilton, the Assistant Secretary of Nationstar Mortgage LLC, known to me (or proved to me on the oath of ______ or through ______ (description of identity card or other document)) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 6 day of February, A.D., 2017.

JACOB D. VALDEZ
Notary Public, State of Texas
Comm. Expires 06-06-2020
Notary ID 130689691

Jacob D. Valdez
Signature of Officer

Jacob D. Valdez
(Printed Name of Officer)

Notary Public
Title of Officer

My Commission expires : 06/06/2020

## Exhibit "A"

Loan Number [redacted]0702

Property Address: **16541 SW 62 ST, SOUTHWEST RANCHES, FL 33331**

Legal Description:
THE FOLLOWING DESCRIBED PROPERTY SITUATED IN THE COUNTY OF BROWARD, STATE OF FLORIDA: LOT 4 OF TRACT 14, SECTION 5, TOWNSHIP 51 SOUTH, RANGE 40 EAST, FLORIDA FRUIT LANDS COMPANY SUBDIVISION NO. 1, AS RECORDED IN PLAT BOOK 2, PAGE 17, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA, MORE FULLY DESCRIBED AS FOLLOWS: COMMENCE AT THE NORTH ONE-QUARTER (NORTH 1/4) CORNER OF SAID SECTION 5, TOWNSHIP 51 SOUTH, RANGE 40 EAST; THENCE SOUTH 01 DEGREES 44 MINUTES 53 SECONDS EAST, A DISTANCE OF 673.06 FEET, ALONG THE WESTERLY LINE OF SAID NORTHEAST ONE-QUARTER (1/4) LINE TO A POINT; THENCE NORTH 89 DEGREES 42 MINUTES 49 SECONDS EAST, A DISTANCE OF 15.00 FEET TO THE NORTHWEST CORNER OF AID TRACT 14; THENCE NORTH 89 DEGREES 42 MINUTES 49 SECONDS EAST, ALONG THE NORTHERLY LINE OF SAID TRACT 14, A DISTANCE OF 792.79 FEET TO THE POINT OF BEGINNING: THENCE NORTH 89 DEGREES 42 MINUTES 49 SECONDS EAST, A DISTANCE OF 255.93 FEET TO A POINT ALONG THE NORTHERLY LINE OF TRACT 14; THENCE SOUTH 01 DEGREES 44 MINUTES 04 SECONDS WEST, A DISTANCE OF 139.48 FEET; THENCE SOUTH 89 DEGREES 42 MINUTES 43 SECONDS WEST, A DISTANCE OF 255.92 FEET; THENCE NORTH 01 DEGREES 44 MINUTES 16 SECONDS WEST, A DISTANCE OF 139.49 FEET TO THE POINT OF BEGINNING. SAID LAND LYING AND BEING IN BROWARD COUNTY, FLORIDA.

Loan No.: [redacted]0702
Borrower: PORFIRIO R. GALLEGOS and MARIA M. GALLEGOS

# AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, PORFIRIO R. GALLEGOS and MARIA M. GALLEGOS ("Borrower") desires Nationstar Mortgage LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated December 14, 2005, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to

Loan No. [redacted]0702
Borrower: PORFIRIO R. GALLEGOS and MARIA M. GALLEGOS

Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

[signature] Date: 12-12-16
**PORFIRIO R. GALLEGOS** -Borrower

[signature] Date: 12-12-16
**MARIA M. GALLEGOS** -Borrower